UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――

UNITED STATES OF AMERICA

-v-

JOHN COSTANZO JR. and
MANUEL RECIO,
                  Defendants.

―――――――――――――――――――――――――――――――

22-CR-281 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      The Defendants in this case are charged in connection with an alleged scheme to bribe DEA employees.  In short, the indictment alleges that from 2018 to 2019, Defendant Manuel Recio, a former DEA agent, made payments that ultimately went to Defendant John Costanzo, a then-current DEA agent, in exchange for nonpublic DEA information.

      The Government has moved to disqualify Recio's retained lawyer, Philip L. Reizenstein, on the ground that Reizenstein is likely to be called as a witness in the Government's case at trial.  (ECF No. 27.)  Recio opposes the motion.  (ECF No. 28.)  On July 15, 2022, the Court held a telephone conference to discuss the motion and whether an evidentiary hearing would be necessary.  On September 1, 2022, the parties appeared in person for oral argument on the motion.

**I.**    **Legal Standard**

      Although a "[a] defendant's right to counsel of his choice is not an absolute one," *United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir. 1979), the Second Circuit has "consistently recognized that the right of a defendant who retains counsel to be represented by that counsel is 'a right of constitutional dimension' . . ." and the "[c]hoice of counsel should not be unnecessarily obstructed by the court." *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d

Cir. 1982) (citations omitted). "In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, [the court] must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsibility." *Id.*

In the context of a criminal defense attorney who is "an actual or unsworn witness" at the trial of the attorney's client, the Second Circuit has held that disqualification is warranted. *United States v. Jones*, 381 F.3d 114, 121 (2d Cir. 2004); *see also United States v. Cain*, 671 F.3d 271, 295-96 (2d Cir. 2012) ("the risk that [defense counsel] would become a witness against his client was sufficient to justify his disqualification"). In these situations, "the disqualification issue [] implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes, and the government's interest in ensuring a fair trial and a just verdict." *Jones*, 381 F.3d at 119; *see also Cunningham*, 672 F.2d at 1074 ("If [defense counsel] were to be sworn as a witness it is clear that he should not serve as trial attorney."). Even where the attorney does not actually take the stand, the attorney's participation in events that are the subject of testimony can "impart to the jury [the attorney's] first-hand knowledge of events without having to swear an oath or be subject to cross-examination." *United States v. Kerik*, 531 F. Supp. 2d 610, 616 (S.D.N.Y. 2008); *see also United States v. Locascio*, 6 F.3d 924, 933-34 (2d Cir. 1993).

The case law in this area is informed by the ethical rules governing lawyers. The New York Rules of Professional Conduct state:

> A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> (1) the testimony relates solely to an uncontested issue;

    (2) the testimony relates solely to the nature and value of legal services rendered in the matter;

    (3) disqualification of the lawyer would work substantial hardship on the client;

    (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or

    (5) the testimony is authorized by the tribunal.

New York Rules of Professional Conduct Rule 3.7.  The rule in Florida is similar.[1]

## II.  Discussion

The Government argues that, even accepting the facts outlined in Recio's July 7, 2022 letter and proffered during the July 15, 2022 telephone conference, Reizenstein should be disqualified as trial counsel.  (*See* ECF No. 36.)[2]

The parties' dispute involves a criminal case in which both Recio and Reizenstein worked on the defense team, *United States v. Johnny Grobman*, No. 18-CR-20989 (S.D. Fla.). Grobman was indicted in December 2018.  Grobman retained David Kubiliun of the law firm Greenspoon Marder, and the firm in turn hired Recio and his private investigation company, Global Legal Consulting.  In February 2019, Reizenstein was added to the defense team, initially handling forfeiture issues and then working on obtaining third-party subpoenas.  In late August 2019, Grobman discharged Greenspoon Marder and retained new counsel.  Mr. Reizenstein

---

[1] *See* Florida Rules of Professional Conduct 3.7 (prohibiting an attorney from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness . . . unless: (1) the testimony relates to an uncontested issue; (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; (3) the testimony relates to the nature and value of legal services rendered in the case; or (4) disqualification of the lawyer would work substantial hardship on the client.").

[2] The Court also assumes the truth of Mr. Reizenstein's factual proffer for purposes of this motion.

3

remained on the defense team through the February 2020 trial, although his duties were limited after August 2019.

Central to this dispute is an invoice from Company-1, or JEM Solutions Inc. ("JEM"), to Recio for $10,750.  (A corresponding check was paid by Recio to JEM.)  The invoice, dated June 3, 2019, reads "Services for Johnny Grobman case."  The Government contends that this was a sham invoice — that JEM did no work for Recio on the Grobman case, but that the invoice was simply a means of disguising payments to Defendant Costanzo.  To establish that JEM did no work for Recio on the Grobman case, the Government intends to call as trial witnesses the three lawyers who were representing Grobman around the time of the invoice:  two lawyers from Greenspoon Marder (Kubilian and an associate) and Mr. Reizenstein.

Recio contends that Reizenstein's testimony has little or no relevance and is not "necessary."  Because the Greenspoon Marder lawyers, not Reizenstein, retained and paid Recio, he argues, they are the ones who would be most likely to know about any work done by JEM for Recio in connection with the Grobman case.  And even if none of the three lawyers knew about JEM, that would not rule out the possibility that Recio had hired and paid JEM for work in connection with the case without the lawyers' knowledge.  Recio also points out that the JEM invoice is dated nearly a month after Recio was paid by Greenspoon Marder, suggesting that none of the lawyers would have knowledge of the JEM invoice.  Given these considerations, Recio argues, the Government's interest in calling Reizenstein does not outweigh Recio's constitutional right to the lawyer of his choice.

As the Government points out, the timing and circumstances of the JEM invoice are consistent with its theory that it was a sham invoice.  To establish that theory at trial, however, the Government must present evidence tending to show that JEM did no work through Recio on

the Grobman case. Absent testimony from JEM in the form of TFO-1, who has invoked his privilege against self-incrimination, the Government has reasonably determined that it must call the three lawyers who worked with Recio on the case for that purpose. And while it is undisputed that the Greenspoon Marder lawyers formally hired Recio, it is also undisputed that Mr. Reizenstein also worked with and met with Recio directly, including at times without the other two lawyers. (7/15/22 Tr. at 14.) Moreover, the fact that Mr. Reizenstein worked on different aspects of the case from the Greenspoon Marder lawyers highlights the importance of his testimony. If the other two lawyers testify that they were aware of no work done by JEM on the Grobman case, but the jury learns that a third lawyer, who happens to be sitting at counsel table, was also working on the case — and working with Recio — the jurors will naturally wonder whether *he* is aware of any such work. The difficulty is compounded when the lawyer begins cross-examining the other two lawyers in detail regarding the Recio's work on the Grobman case. This is the "unsworn witness" problem. As the court explained in *United States v. Kerik*, 531 F. Supp. 2d 610, 616 (S.D.N.Y. 2008):

> [The lawyer's] questions during cross-examination may be afforded undue credibility because he has first-hand knowledge of the statements and events about which [the witness] would likely be questioned. . . . [H]e will either be forced to sit quietly in detriment to his client, or (without taking an oath or being cross-examined) to ask questions to which the jury might assign undue weight. In either case, the risk of prejudice to the Defendant or the Government is too great, and places in jeopardy the integrity of the proceeding.

To be sure, calling the three lawyers as witnesses on this point does not close the loop with mathematical certainty. As Recio points out, it is at least theoretically possible that *none* of the three lawyers knew about a legitimate subcontract that Recio could have made with JEM for work on the Grobman case. But common sense suggests that at least one of the lawyers handling a criminal case would likely know about a $10,750 project subcontracted by the defense team's

retained investigator. That is sufficient to support the Government's position that Mr. Reizenstein's testimony is relevant and important.

The Court also concludes that the testimony is necessary given the significance of the JEM invoice in the context of the case. The JEM invoice is one of only two invoices from Recio to JEM, which in turn represent two of five allegedly unlawful payments at the heart of the Government's case. (9/1/22 Tr. at 34.) The JEM invoice is a particularly important piece of evidence for the Government, on its theory, because its explicit reference to the Grobman case allows the Government to disprove its purported justification and show an intent to disguise the payment. (*See id*.)

The Court is mindful that a defendant's choice of counsel "should not be unnecessarily obstructed by the court." *Cunningham*, 672 F.2d at 1070. But the Second Circuit has repeatedly made clear that, in criminal cases, a defense lawyer's status as an actual or unsworn witness is sufficient to warrant disqualification as trial counsel. *See Cain*, 671 F.3d at 295-96; *Jones*, 381 F.3d at 121; *Ciak v. United States*, 59 F.3d 296, 304-05 (2d Cir. 1995), *abrogated on other grounds in Mickens v. Taylor*, 535 U.S. 162 (2002); *United States v. McKeon*, 738 F.2d 26, 35 (2d Cir. 1984). Even in *Cunningham*, the 1982 criminal case on which Recio principally relies, the court concluded that "if [the defense lawyer] were to be sworn as a witness it is clear that he should not serve as trial attorney." 672 F.2d at 1074. And the *Cunningham* court went on to emphasize the "unsworn witness" problem: "Since as an unsworn witness [the lawyer] would not be subject to cross-examination or explicit impeachment, the interest sought to be protected

by the Disciplinary Rules would be even more seriously eroded than if [the lawyer] appeared as a sworn witness." *Id*. at 1075.[3]

The Court also concludes that disqualifying Mr. Reizenstein as trial counsel will not result in such substantial hardship to Recio as to outweigh the need for disqualification. It is true that Reizenstein has represented Recio for nearly three years. But this case was not charged until May of this year, and Rule 16 discovery was produced during the summer. The deadline for pretrial motions has not yet passed and a trial date has not been set. And any disadvantage to Recio can be "reduced considerably," *Cunningham*, 672 F.2d at 1074, by limiting the disqualification to Reizenstein's actual role as trial counsel. This will allow him to continue to represent Recio for all other purposes.

### III. Conclusion

For the foregoing reasons, the Government's motion to disqualify Mr. Reizenstein is granted to the extent that Mr. Reizenstein will not be permitted to serve as trial counsel for Mr. Recio in this case. He will, however, be allowed to serve as defense counsel for all purposes other than trial counsel. (The Clerk is directed to terminate ECF No. 27.)

SO ORDERED.

Dated: October 25, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[3] Recio also cites a number of civil cases in which courts have declined to disqualify lawyers on the ground that their testimony was not necessary. Those cases are distinguishable for a number of reasons. First, "the interests of the government and the public in sustaining the disqualification" are stronger here. *Cunningham*, 672 F.2d at 1074. Moreover, unlike here, in those cases the testimony was not necessary because it was cumulative. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 423 (S.D.N.Y. 2015); *Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 375 (E.D.N.Y. 2010) (Bianco, J.).