UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
                                              :
  UNITED STATES OF AMERICA                    :
                                              :
           - v. -                             :        22 Cr. 281 (JPO)
                                              :
  JOHN COSTANZO, JR., and                     :
  MANUEL RECIO,                               :
                                              :
                  Defendants.                 :
                                              :
------------------------------------------------- x
```

## THE GOVERNMENT'S BRIEF IN OPPOSITION TO
## <u>THE DEFENDANT MANUEL RECIO'S MOTION TO QUASH</u>

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Mathew Andrews
Emily Deininger
Sheb Swett
Assistant United States Attorneys
- *Of Counsel* -

**PRELIMINARY STATEMENT**

The Government files this motion in opposition to defendant Manual Recio's request to quash a trial subpoena (the "Motion" or "Mot.") served on Global Legal Consulting on or about August 28, 2023 (the "GLC Trial Subpoena"). Recio seeks to quash the GLC Trial Subpoena on three grounds: *first*, the defense argues that the subpoena is not sufficiently specific; *second*, the defense argues that the materials are already in the Government's possession, and *third*, the defense argues that the subpoena calls for testimony in violation of Recio's Fifth Amendment privilege. These arguments are without merit and the Motion should be denied.

**BACKGROUND**

A. **Factual Background**

At trial, the Government expects to show that Costanzo, Recio, and entered into a conspiracy beginning in or about October 2018 in which Recio, upon his retirement from the Drug Enforcement Administration ("DEA"), worked with trusted attorneys to recruit and represent targets of DEA investigations using confidential information furnished by Costanzo. This information included information contained in the DEA's Narcotics and Dangerous Drugs Information System ("NADDIS"), the dates of forthcoming indictments and arrests, and information about and provided by confidential sources.

In turn, Recio and the attorneys paid Costanzo for that information through a network of trusted individuals, including family members and colleagues. As part of the scheme, Recio incorporated a company called Global Legal Consulting ("GLC"). Recio, using GLC, then paid companies owned by family members and colleagues of Costanzo. One of these companies, EBCO International of Miami ("EBCO"), was owned by Costanzo's father—John Costanzo, Sr. The other company, JEM Solutions, was owned by Costanzo's colleague, Task Force Officer Edwin Pagan

III. The payments from Recio's company, GLC, to EBCO and JEM Solutions included the following payments on the following dates:

- 11/14/18: GLC writes $2,500 check to EBCO
- 4/17/19: GLC writes $10,000 check to JEM Solutions
- 6/3/19: GLC writes $10,750 check to JEM Solutions

The Government intends to prove at trial that these were not legitimate payments for services rendered. Instead, they were bribe payments intended for Costanzo.

## B. Procedural History

### 1. The JEM Solutions Inc Grand Jury Subpoena

The Government served a grand jury subpoena on JEM Solutions for documents on or about March 19, 2021 (the "JEM Grand Jury Subpoena"), incorporated herein as Exhibit A. Among other things, the JEM Grand Jury Subpoena requested:

> All agreements, contracts, invoices, order forms, documents reflecting work performed, correspondence files, memoranda, notes, or other records of communications, internal memoranda and reports, and all other documents relating to any JEM Solutions clients, including but not limited to Manuel Recio, Global Legal Consulting LLC, and Yonder Alonso.

Exhibit A at 3. JEM responded to the JEM Grand Jury Subpoena on or about September 15, 2021. The JEM Grand Jury Subpoena response contained two handwritten invoices allegedly written from JEM to GLC. These handwritten invoices—which contain no metadata verifying their authenticity—are incorporated herein as Exhibit B and Exhibit C. The invoices list the payments, respectively, as "Investment of Risk Management Company" and "Services for Johnny Grobman Case." The JEM Grand Jury Subpoena response did not contain any agreements or contracts between JEM and GLC supporting the approximately $20,000 in payments. The JEM Grand Jury Subpoena response also did not contain any electronic communications relating to the payments or any documentation or work product whatsoever

showing that the payments were for "Investment of Risk Management Company" and "Services for Johnny Grobman Case" beyond the two invoices.

2. <u>The GLC Grand Jury Subpoena</u>

The Government thereafter served a grand jury subpoena on GLC for documents on or about February 22, 2023 (the "GLC Grand Jury Subpoena"), incorporated herein as <u>Exhibit D</u>. Among other things, the GLC Grand Jury Subpoena requested:

> Any and all agreements, contracts, or retention letters between [GLC] and/or any [GLC] Members and . . . Edwin Pagan III; [] JEM Solutions Inc.; [] John Costanzo Sr.; [and] Ebco International of Miami, Inc.

Exhibit D at 4. GLC responded to the GLC Grand Jury Subpoena on or about July 26, 2023. The GLC Grand Jury Subpoena provided no documentation whatsoever for the payments from GLC to JEM Solutions or EBCO.

3. <u>The EBCO Invoice</u>

On or about August 15, 2023, counsel for Recio submitted a letter motion to the Court noting that one of Recio's email accounts contained an alleged invoice from EBCO to GLC for the $2,500 on November 14, 2018. The alleged invoice is incorporated as <u>Exhibit E</u> (the "EBCO Invoice").

4. <u>The GLC Trial Subpoena</u>

GLC produced no documentation supporting the nearly $25,000 in payments to JEM Solutions and EBCO in response to the GLC Grand Jury Subpoena. The Government thus intends to argue is evidence that these were bribery payments. The Government anticipates, however, that the defense will argue that GLC had documentation supporting these transactions but that the subpoenas were insufficiently specific.

To preclude this argument, the Government served the GLC Trial Subpoena on or about August 28, 2023. The GLC Trial Subpoena attached the three invoices described above to the GLC Trial Subpoena as Exhibits A-C (the two handwritten invoices from JEM Solutions and the EBCO invoice). The GLC Trial Subpoena then requested the following materials:

- All documents, communications, or other records related to the November 12, 2018 invoice attached hereto as Exhibit A.
- All documents, communications, or other records related to the April 17, 2019 invoice attached hereto as Exhibit B.
- All documents, communications, or other records related to the June 3, 2019 invoice attached hereto as Exhibit C.

5. The September 11, 2023 Meet and Confer

The Government conferred with defense counsel about the GLC Trial Subpoena on or about September 11, 2023. The Government explained that GLC produced no documentation for the above-described payments in response to the Grand Jury Subpoena and that the Government believed that the invoices from JEM Solutions and EBCO were fabricated.  The Government also explained that it was serving the GLC Trial Subpoena to avoid a potential defense argument that the GLC did not produce documentation for the payments discussed herein because the language of the GLC Grand Jury Subpoena was somehow ambiguous. Defense counsel acknowledged that they understood the rationale for the subpoena.

Defense counsel suggested that the phrase "related to," in the GLC Trial Subpoena was confusing, which the Government denied. The Government, however, indicated its willingness to issue a revised subpoena with different language if defense counsel had any suggestions. Defense counsel declined to make any suggestions of clearer language.

Defense counsel lastly represented, based on their investigation at the time of the call, that there were no documents in GLC's possession responsive to the GLC Trial Subpoena for the payment on November 12, 2018 other than the physical check from GLC to EBCO. Defense

counsel further represented, based on their investigation at the time of the call, that the only documents responsive to the GLC Trial Subpoena for the payment on April 17, 2019 might be electronic communications. Defense counsel also represented that there were potentially electronic communications responsive to the GLC Trial Subpoena for the payment on June 3, 2019.

## ARGUMENT

Defense counsel seeks to avoid an uncomfortable admission—that GLC has no documentation for its payments to Costanzo's father and colleague. However, discomfort is not a basis to quash a valid trial subpoena to a corporation. Recio accordingly seeks to quash the GLC Trial Subpoena on three different grounds—none of which have merit. *First*, the defense argues that the subpoena is not sufficiently specific; *second*, the defense argues that the materials are already in the Government's possession, and *third*, the defense argues that the subpoena calls for testimony in violation of Recio's Fifth Amendment privilege. These arguments ignore that the GLC Trial Subpoena is narrowly tailored to evidence regarding to the three invoices at issue, there is a robust factual record supporting the rationale for the subpoena, and that the Second Circuit has clearly held that corporations do not have Fifth Amendment rights.

A. Relevant Law

Under Federal Rule of Criminal Procedure 17(c)(1), the Court may authorize the issuance of a subpoena directing the production of materials prior to trial. Under Rule 17(c)(2), the Court may quash or modify such a subpoena "if compliance would be unreasonable or oppressive." To avoid this, the party seeking compliance with the subpoena must show by a preponderance of the evidence that the requested materials are (1) relevant; (2) specifically identified; (3) admissible; and (4) "not otherwise procurable by the exercise of due diligence." *United States v. Barnes*, 560 F. App'x 36, 40 (2d Cir. 2014) (summary order).

B. <u>Discussion</u>

1. <u>The Trial Subpoena Is Sufficiently Specific</u>

Defense counsel first argues that the Government cannot meet its burden because the Government must "demonstrate with reasonable particularity that it knows of the existence and location of the subpoenaed documents," Mot. at 3, (quoting *United States v. Fridman*, 337 F. Supp. 3d 259, 265 (S.D.N.Y. 2018), *aff'd sub nom.* 974 F.3d 163 (2nd Cir. 2020)), and "the Government has acknowledged that it is unaware of the existence of responsive documents," *id.* This is a mischaracterization of the law.

The specificity requirement ensures that a 17(c) subpoena is not turned into a "fishing expedition to see what may turn up." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951); *United States v. Tucker*, 249 F.R.D. 58, 65 (S.D.N.Y. 2008), *as amended* (Feb. 20, 2008) ("Because of the requirement of specificity, *Nixon* makes clear that a Rule 17(c) subpoena may not be used for a "general fishing expedition." (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974) (quotation marks omitted)).

That is not the case here. The GLC Trial Subpoena seeks documentation for three specific payments on three specific days: the $2,500 to ECBO on November 12, 2018, the $10,000 payment to JEM Solutions on April 17, 2019, and the $10,750 payment to JEM Solutions on June 3, 2019. For each of these payments, the Government has obtained a purported invoice, but nothing more. The Government anticipates—based on the evidence set forth above and previously presented to the Court—that GLC will produce *nothing* in response to the GLC Grand Jury Subpoena. Recio's counsel confirmed as much during the parties September 11, 2023 call.

The absence of such documentation is highly relevant to the Government's case. The Government's theory at trial is that the payments from GLC to Costanzo's father and colleague

were bribes meant for Costanzo. The Government previously served grand jury subpoenas on GLC and JEM Solutions for contractual agreements between GLC, JEM, and EBCO. GLC produced no documentation, and JEM Solutions produced two handwritten invoices that appear, based on the invoices themselves and on other evidence, to be fabricated. This fact is consistent with the Government's theory of the case, and the Government intends to introduce GLC and JEM Solutions' grand jury subpoena returns at trial.

However, counsel for Recio might claim at trial that documentation for the payments exist, and that such documents were not produced because the GLC Grand Jury Subpoena did not specifically require all documents, communications, or other records related to the payments discussed above, but rather only required "agreements, contracts, or retention letters . . . .:" Exhibit D at 4. Indeed, even if Recio's counsel did not explicitly argue this point, the jury may have the same question based on the text of the GLC Grand Jury Subpoena. Accordingly, the purpose of the GLC Trial Subpoena is to address this meritless defense.[1]

The *Fridman* decision cited by counsel is not to the contrary. *See* Mot. at 3 (citing *Fridman*, 337 F. Supp. 3d at 265). Judge Marrero's decision in *Fridman* had nothing to do with the specificity requirement under *Nixon*. Instead, the Government in *Fridman* served a subpoena on the defendant in his individual capacity, the defendant invoked his Fifth Amendment privilege, and the *Fridman* Court addressed whether the "foregone conclusion" exception applied. *See Fridman*, 337 F. Supp.

---

[1] Counsel for Recio confirmed during their September 11, 2023 call with the Government regarding the GLC Trial Subpoena that they did not believe that GLC has any documentation responsive to the subpoena, with the exception of potential electronic communications.

Moreover, assuming this is incorrect, and GLC does have, and could produce, documentation related to the three payments, that evidence would also be highly relevant to the Government's case and the issue of determining whether the payments were for legitimate services as opposed to being disguised payments for Costanzo's behalf.

3d at 265. In holding that the Government had not met its burden in showing this exception, the *Fridman* Court noted that in "order for the foregone conclusion doctrine to apply, the United States must 'demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents.'" *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993)). This is not a case involving the "forgone conclusion" exception, and *Fridman* has no bearing on the particularity requirement under *Nixon*.

Simply put, Rule 17 does not require the Government to specify with reasonable particularity the location of documents that do not exist. The Government anticipates—based on the evidence set forth above and previously presented to the Court—that *nothing* will turn up in response to the GLC Grand Jury Subpoena. Defense counsel does not argue to the contrary.[2] And to the extent documentation does exist, the GLC Trial Subpoena is sufficiently specific. The GLC Trial Subpoena is narrowly tailored to seek records and communications for three specific payments on three specific days, each of which the Government knows occured based on financial records. As such, the GLC Trial Subpoena meets *Nixon*'s requirement of particularity.

2. <u>The Materials Sought by the Government Are Not Within the Possession of the Government</u>

The defendant next argues that the Government cannot establish that the documents are not otherwise procurable by exercise of due diligence because the "Government has all of Mr. Recio's electronically stored information, bank records and other discovery for the relevant time periods." Mot. at 3. Recio misses the point. The purpose of the GLC Trial Subpoena is to show that GLC has *no* documentation supporting its payments to Costanzo's father and colleague (a fact supported

---

[2] Indeed, if such documentation did exist, the Government expects defense counsel would have produced it in discovery as items to be used in their case-in-chief. Fed. R. Crim. Pro. 16(b)(1)(A)(ii).

by GLC's response to the GLC Grand Jury Subpoena). From this absence, a jury can rationally infer that the payments were not for legitimate services but rather were bribes. The fact that the Government has other, irrelevant documents from third-party custodians is immaterial. The question is what GLC has in its possession, and the only custodian that can answer that question is GLC.

   3.   The Subpoena Does Not Seek Testimonial Information

   The defendant lastly repeats his claim—previously rejected by the Court—that GLC is not required to comply with subpoenas because it would impair Recio's Fifth Amendment privilege. The Court denied defendant's motion to quash the GLC Grand Jury Subpoena on the same ground, holding that the "Second Circuit has held that corporations cannot avail themselves of the Fifth Amendment's protection against the compelled production of potentially incriminating testimonial communications, based on the 'long-established' collective entity rule." Sealed Opinion and Order dated July 17, 2023, at 4 (quoting *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 157 (2d Cir. 2010) (citation omitted)). As the Court recognized, "A corollary of this rule is that the custodian of corporate records, who acts as a representative of the corporation, cannot refuse to produce corporate records on Fifth Amendment grounds . . . This is true (1) whether the subpoena is directed to the corporation itself or to the custodian in his representative capacity, and (2) regardless of how small the corporation may be." *Id.* (quoting *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 157). As such, "the Second Circuit reiterated that 'a one-person corporation cannot avail itself of the Fifth Amendment privilege.'" *Id.* (quoting *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 158). "This principle applies equally to a one-member limited liability company." *Id.* (citing *S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 364-65 (N.D.N.Y. 2010)). This principal—that corporations do not have Fifth Amendment rights—applies regardless

of whether the subpoena is a grand jury subpoena or a trial subpoena. *See, e.g.*, *United States v. Gel Spice Co.*, 601 F. Supp. 1214, 1220 (E.D.N.Y. 1985) ("Fed. R. Crim. P. 17(c) provides for the subpoena of corporate records, and, as a corporate defendant, Gel Spice is not entitled to claim Fifth Amendment protection against self-incrimination"); *United States v. Witt*, 542 F. Supp. 696, 698 (S.D.N.Y.), *aff'd*, 697 F.2d 301 (2d Cir. 1982) ("The issue is whether the patient records are corporate records as to which no fifth amendment privilege attaches. I hold that they are." (internal citation omitted)).  The cases relied upon by the defendant are inapposite because they address subpoenas *duces tecum* served on individuals, not corporations. Here, the GLC Trial Subpoena is directed to the custodian of records of GLC, the corporate entity, not Recio, and therefore Recio's Fifth Amendment rights are not implicated.

### Conclusion

Wherefore, the Government respectfully requests that the Court deny defendant Manual Recio's motion to quash the GLC Trial Subpoena.


Dated: New York, New York
          September 25, 2023

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney

                              By:      /s/
                                        Mathew Andrews
                                        Emily Deininger
                                        Sheb Swett
                                        Assistant United States Attorneys
                                        Southern District of New York

# Exhibit A

# Exhibit B

# Exhibit C

# Exhibit D

# Exhibit E