UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

JOHN COSTANZO, JR., and MANUEL RECIO,

                            Defendants.

22-CR-281 (JPO)

--SEALED--
OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

On May 18, 2022, a grand jury returned an indictment (the "Indictment") charging Defendants John Costanzo, Jr. and Manuel Recio with one count of conspiracy to commit bribery, in violation of 18 U.S.C. § 371 (Count One); one count each of substantive bribery, in violation of 18 U.S.C. §§ 201 and 2 (Counts Two and Three);[1] one count of conspiracy to commit honest services fraud, in violation of 18 U.S.C. §§ 1349 (Count Four); and one count of honest services fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2 (Count Five). (ECF No. 1.) Pending before the Court are Defendants' motions to suppress evidence obtained from a wiretap of Recio's cellphone, or else obtain a *Franks* hearing pursuant to 18 U.S.C. § 2518(10), and to dismiss multiplicitous counts of the indictment. (ECF Nos. 60 and 64). For the reasons that follow, the pending motions are denied.

---

[1] Count Two charges Costanzo with being a public official who accepted a bribe; Count Three charges Recio with bribery of a public official.

1

I.     Background

    A.     The Alleged Bribery Scheme

Defendant Costanzo has been employed as a Special Agent of the Drug Enforcement Agency (DEA) since approximately 2004, serving as a Group Supervisor within the agency's Miami Field Office from 2014 to 2019.  (ECF No. 63 at 1.)  Defendant Recio served as a DEA Special Agent from 1997 until he retired in 2018.  (*Id.*)  After he retired, Recio opened his own consulting firm, Global Legal Consulting, LLC, and began to work as a private investigator for criminal defense attorneys.  (*Id.*)  The Government alleges that by 2018, Costanzo had been sharing confidential information obtained in his official capacity as a DEA Special Agent, including forthcoming indictments and arrest plans, with Recio.  (ECF No. 69 at 1-2.)  Recio then allegedly used that information as a basis to recruit targets of ongoing criminal investigations as new clients for his consulting firm.  *Id.*  Costanzo also allegedly shared the confidential information with two criminal defense attorneys who worked closely with Recio, "Attorney-1" and "Attorney-2," for their use in recruiting clients.  (*Id.*)

The FBI's investigation into the alleged bribery scheme involving Recio, Costanzo, and the criminal defense attorneys resulted from a tip from a confidential informant, designated as "CI-1."  (ECF No. 63 at 1-2.)  In October 2018, the FBI approached CI-1 about his involvement in a separate scheme to launder money from Venezuela into the United States.  (*Id.*)  When the FBI team, led by Special Agent Christopher Delzotto, asked C1-1 whether he was aware of any other criminal activity, he identified the alleged bribery scheme among the Defendants and several unindicted co-conspirators.  (ECF No. 63 at 2; No. 69 at 2.)  He then agreed to serve as a confidential informant.  (*Id.*)

B.     **The Wiretap**

On July 1, 2019, Judge Andrew L. Carter, Jr. authorized the Government to begin intercepting communications on a cellphone belonging to Attorney-2 ("Target Cellphone-1") and a cellphone belonging to Recio ("Target Cellphone-2"). (*Id.*) In support of its application for the wiretap, the Government submitted a 39-page sworn affidavit from FBI Special Agent Delzotto, which in turn relied on statements and recordings from CI-1; statements from a corroborating witness, a "former high-ranking DEA official" ("Individual-1"); bank account information for Recio's business; and toll record analysis from the two cellphones. (ECF No. 63 at 2; No. 69 at 2-4.) After the initial wiretap authorization expired, the Government obtained two additional reauthorizations for Recio's cellphone, which permitted it to intercept communications for an additional sixty days.[2] (ECF No. 69 at 5.)

On March 13, 2023, Defendants each moved to suppress evidence derived from the wiretaps or else to obtain a *Franks* hearing, and to dismiss multiplicitous counts in the indictment. The Court heard oral argument on the motions on June 15, 2023.

II.    **Legal Standards**

A.     **Wiretap Evidence**

A motion to suppress wiretap evidence based on flaws in the underlying affidavit is resolved using the framework set by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978). "The *Franks* standard is a high one." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991). To suppress evidence obtained through an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the

---

[2] Defendants move to suppress evidence derived from the two reauthorizations as fruits of the poisonous tree from the initial wiretap, rather than on independent grounds.

result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary (that is, material) to the issuing judge's probable cause or necessity finding. *United States v. Lambus*, 897 F.3d 368, 397 (2d Cir. 2018). Because "there is . . . a presumption of validity with respect to the affidavit supporting the search warrant," to obtain an evidentiary hearing under *Franks*, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. Rather, the defendant must establish the intent and materiality prongs by a preponderance of the evidence. *See United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008).

### B.     Multiplicity

Under the Double Jeopardy Clause of the Fifth Amendment, no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." *United States v. Josephberg*, 459 F.3d 350, 354 (2d Cir. 2006) (quoting U.S. Const. amend. V). "Where there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed." *Id.* at 355. And "even where the Double Jeopardy Clause would bar cumulative punishment for more than one such offense, 'the Clause does not prohibit the State from prosecuting [the defendant] for such multiple offenses in a single prosecution.'" *Id.* (quoting *Ohio v. Johnson*, 467 U.S. 493, 500 (1984)).

## III.    Discussion

### A.     Suppression

Defendants[3] argue that the Court must suppress all recordings obtained from the wiretap of Recio's phone because the wiretap applications were statutorily and constitutionally deficient.

---

[3] The Government does not contest Costanzo's standing to move to suppress evidence derived from the wiretap of Recio's phone. Additionally, because Recio adopts the entirety of

Specifically, they contend that (1) the Delzotto Affidavit contained material misstatements and omissions that fatally undermine Judge Carter's finding of probable cause and (2) the Government's Title III application failed to establish necessity for the wiretap interceptions, contrary to 18 U.S.C. § 2518(1)(c).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 governs court-ordered interceptions of oral communications. *United States v. Yannotti*, 541 F.3d 112, 124 (2d Cir. 2008) (citing 18 U.S.C. § 2518). A court may authorize a wiretap "if it determines, on the basis of the facts submitted by the applicant, that there is probable cause to believe (1) that an individual was committing, had committed, or is about to commit a crime; (2) that communications concerning that crime will be obtained through the wiretap; and (3) that the premises to be wiretapped were being used for criminal purposes or are about to be used or owned by the target of the wiretap." *Id.* (citation omitted). An intercepted communication is inadmissible if it was "'unlawfully intercepted,' intercepted pursuant to an authorization or approval that is 'insufficient on its face,' or intercepted not in conformity 'with the order of authorization or approval.'" *Id.* (quoting 18 U.S.C. § 2518(10)(a)).

### 1. Probable Cause

First, Defendants challenge the basis of Judge Carter's probable cause determination. To reiterate, suppression of the evidence derived from the wiretap requires a showing on a defendant's part that (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or

---

Costanzo's memorandum of law in support of his motion to suppress and dismiss, the Court addresses both Defendants' arguments jointly.

omissions were material to the issuing judge's finding of probable cause or necessity. *Lambus*, 897 F.3d at 397.

Probable cause sufficient to support a wiretap authorization exists when "facts made known to the issuing court are sufficient to warrant a prudent [person] in believing that evidence of a crime could be obtained through the use of electronic surveillance." *United States v. Solomonyan*, 451 F. Supp. 2d 626, 635 (S.D.N.Y. 2006) (citation omitted). Further, "probable cause is not a particularly demanding standard," given that "only the probability, and not the prima facie showing, of criminal activity is the standard." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). The issuing court's probable cause determination is entitled to "substantial deference," and as such, "any doubt about the existence of probable cause must be resolved in favor of upholding the issuing court's order." *Solomonyan*, 451 F. Supp. 2d at 636 (citations and quotation marks omitted). To determine whether a misstatement or omission was material to a probable cause determination, the reviewing court "corrects the errors and then resolves *de novo* whether the hypothetical corrected affidavit still establishes probable cause." *United States v. Lahey*, 967 F. Supp. 2d 698, 711 (S.D.N.Y. 2013) (citing *United States v. Rajaratnam*, 719 F.3d 139, 146-47 (2d Cir. 2013)). Specifically, "[c]ourts should disregard the allegedly false statements, insert the omitted truths, and determine whether there remains a residue of independent and lawful information sufficient to support probable cause." *Nejad*, 436 F. Supp. at 719 (quoting *Rajaratnam*, 719 F.3d at 146; *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003)) (quotations and internal citations omitted).

Defendants identify four categories of misrepresentations or omissions that purportedly undermine Judge Carter's probable cause determination: (1) that Special Agent Delzotto misrepresented and omitted information about CI-1's criminal activity, including a history of

6

drug trafficking and violent criminal conduct in Colombia[4] and the fact that he had been "blackballed by the DEA"; (2) that Delzotto misrepresented certain "corroborating facts," including corroboration from the former DEA official, Individual-1; (3) that Delzotto misrepresented facts on other topics, such as the circumstances of Recio's retirement from the DEA; and (4) that Delzotto relied on stale information in his Affidavit, including alleged evidence of bribery dated three years before the Affidavit.  Even if the Court were to accept as true that these facts were misrepresented in or omitted from the wiretap authorization application, the untainted or corrected portions of the application would still have supported a finding of probable cause.

    First, even if the Affidavit had disclosed CI-1's criminal history, including drug trafficking and murder, the Court has identified no basis to conclude that this information would have undermined his credibility as a witness in this case, especially given the extent of the corroborating evidence contained in the Affidavit.  Nor does the available evidence contradict the statement within the Affidavit that "CI-1 does not have any criminal *convictions*" (emphasis added).  Additionally, Recio frames CI-1's involvement in a bribery scheme involving an individual named Alex Nain Saab as a material omission because Costanzo was part of a DEA team investigating Saab.  According to Recio, CI-1 therefore had an undisclosed motive to make false statements about Costanzo.  But even if this omission had been corrected, the Affidavit would still have supported a finding of probable cause.  "In addition to considering an informant's veracity, reliability, and basis of knowledge, in assessing the totality of the circumstances [courts] also evaluate whether the information an informant provides is

---

[4] Defendants contend that CI-1 murdered three people in Colombia; worked as a soldier and transporter in the drug trafficking trade; and illegally re-entered the United States, making him subject to deportation. (ECF No. 63 at 8-9.)

corroborated by independent police investigation." *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) (holding that district court improperly discounted information from informant who was believed to be a participant in the crime at issue).  Here, even if CI-1 had a motive to make false statements about Costanzo, information about Costanzo's involvement in the scheme was corroborated by independent police investigation, including recorded audio conversations between Attorney-2 and CI-1 that supported Costanzo's involvement, whether by name or by implication.  (*E.g.*, Affidavit at 16-18, 19).

Second, even if the Affidavit had been corrected to state that CI-1 had been "blackballed" by the DEA, the Court may credit the explanation given by the Government's witness, which is that CI-1 was "blackballed" due to an intra-agency feud between the New York and Miami field offices of the DEA.

Third, even setting aside the other aspects of the Affidavit that Defendants contest, there was sufficient evidence to support a finding of probable cause.  For example, the Affidavit described March 16, 2019 and April 11, 2019 recorded meetings between CI-1 and Recio in which they openly discussed CI-1 contacting DEA targets for recruitment on Recio's behalf.  It described the June 3, 2019 recorded phone call between CI-1 and Recio in which they discussed meeting with Attorney-2 to recruit a DEA target as a client.  And at the end of that call, CI-1 asked Recio to speak with Costanzo about the same topic.  The Affidavit also described a pattern of payments flowing from Attorney-1 to Recio's consulting firm after Recio left the DEA, which Delzotto concluded was "consistent with the scheme to obtain grand jury information for attorneys in exchange for compensation" based on his "training, experience, and involvement in [the] investigation."  While Defendants argue that there is nothing suspect about a business partnership between a defense attorney and a private investigator, establishing probable cause

requires only a finding that there is a *probability* of criminal activity; a prima facie showing is not required. Defendants' arguments about other plausible explanations for the evidence contained in the Affidavit are not relevant at this stage of the proceeding. *See Gagnon*, 373 F.3d at 236 ("[T]he fact that an innocent explanation may be consistent with the facts as alleged . . . does not negate probable cause.") (citation omitted).

Finally, Costanzo argues that the reference in the Affidavit regarding an illegal payment to him from Attorney-2, in the form of furniture and a high-end watch, was based on stale, three-year-old information. Because the passage of time between an allegedly illegal act and a wiretap application "becomes less significant" when the defendant is accused of an ongoing course of criminal activity, the relevant case law does not contradict Judge Carter's finding of probable cause. *See United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981). Additionally, Defendants argue that the reference to the alleged payments constitutes a material misstatement because the relevant portion of the audio recording was, in fact, unintelligible. The Government contends that the draft translation of the audio recording was accurate on this point. While the parties put forth competing interpretations of the translation, there is no basis to conclude that the contested translation constitutes a misstatement for the purposes of the *Franks* analysis. And even if the Court were to set aside the statement about the alleged bribe, the other corroborating information in the Affidavit would still support a finding of probable cause to believe "that evidence of *a* crime could be obtained through the use of electronic surveillance." *Solomonyan*, 451 F. Supp. 2d at 63 (emphasis added).

The foregoing, viewed in light of the requirement that the Court give substantial deference to the issuing court's probable cause determination, provides a sufficient basis to conclude that probable cause existed for the wiretap of Recio's cellphone.

## 2. Necessity

Defendants also contend that the Government failed to establish the necessity of the wiretap. Title III requires that wiretap applications provide a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Rajaratnam*, 719 F.3d at 144 (quoting 18 U.S.C. § 2518(1)(c)). The statute "only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods," *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009) (citation omitted). While the Second Circuit has cautioned that "generalized and conclusory statements that other investigative procedures would prove unsuccessful" will not satisfy the statutory requirement, it has also instructed that "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance." *Id.*

The Affidavit provided a sufficiently robust description of the progress of the investigation and the difficulties inherent in using other investigative techniques, including (1) the fact that attempting to insert an undercover officer into a tight-knit network of current DEA agents, former DEA agents, and defense attorneys could be counterproductive; (2) the low likelihood of being able to "flip" another member of the alleged scheme, given the close relationships between the participants; and (3) the high likelihood that the targets of the investigation would be able to discover attempted physical surveillance, given their law enforcement backgrounds. While Defendants argue that the FBI could have and should have used alternative techniques, the Government is not obligated to exhaust all alternative methods. The detailed and nonconclusory explanation of the investigative decision-making contained within the Affidavit is sufficient to support a finding of necessity.

10

The Court therefore concludes that the Government's Affidavit contained a sufficient showing of probable cause and necessity, even correcting for the purported misstatements and omissions. Because the misstatements and omissions where therefore not material to the findings of probable cause and necessity, the motion to suppress must be denied. The Court need not reach the issue of whether the claimed inaccuracies or omissions resulted from Delzotto making deliberate falsehoods or acting with reckless disregard for the truth.

### 3. *Franks* Hearing

As an alternative to suppression, Defendants request a *Franks* hearing. "To obtain a *Franks* hearing on a motion to suppress on the basis of alleged misstatements or omissions in a warrant affidavit, a defendant must make a substantial preliminary showing that (1) there were intentional misrepresentations or omissions in the warrant affidavit, or, in other words the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) those misrepresentations or omissions were material." *Nejad*, 436 F. Supp. 3d at 718–19 (citation and internal quotation marks omitted). Because Defendants have failed to make a substantial preliminary showing as to the second required element, the request for a *Franks* hearing is denied.

### B. Multiplicity

As Defendants acknowledge, it is a regular practice of courts in the Second Circuit to deny pre-trial motions to dismiss potentially duplicitous or multiplicitous counts, reserving decision until after the jury has rendered a verdict. *See Josephburg*, 459 F.3d at 355 ("Where there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed."); *see also, e.g.*, *United States v. Medina*, No. S3 13 CR 272, 2014 WL 3057917, at *3 (S.D.N.Y. July 7, 2014) ("Since *Josephberg*, courts in this Circuit have routinely

11

denied pre-trial motions to dismiss potentially multiplicitous counts as premature."); *United States v. Mostafa*, 965 F. Supp. 2d 451, 464 (S.D.N.Y. 2013) ("It is well established that the Double Jeopardy clause does not prohibit simultaneous prosecutions for the same offense; it prohibits duplicative punishment . . . Accordingly, multiplicity is properly addressed by the trial court at the sentencing stage.) (citations omitted). The motion to dismiss multiplicitous counts is denied without prejudice on this basis. The issue of multiplicity may be raised again post-trial, if applicable.

### IV. Conclusion

For the foregoing reasons, Defendants' motions suppress and to dismiss multiplicitous counts are denied.

The Clerk of Court is directed to close the motions at ECF Nos. 60 and 64.

The parties shall jointly propose redactions to this Sealed Opinion and Order so that it may be docketed on the public record. The proposed redactions shall be submitted no later than 14 days from the date of this Opinion and Order.

SO ORDERED.

Dated: July 17, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge