UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 22-CR-281 (JPO) |
| -v- | |
| JOHN COSTANZO JR. and MANUEL RECIO, | OPINION AND ORDER |
| Defendant. | |

J. PAUL OETKEN, District Judge:

Following a jury trial, Defendants John Costanzo Jr. and Manuel Recio were convicted of bribery, honest services wire fraud, and related conspiracy charges for participating in a bribery scheme to trade confidential Drug Enforcement Agency ("DEA") information for financial benefits. The Government now moves for a ruling that the crime-fraud exception to attorney-client privilege and work-product doctrine applies to communications between Recio and two defense attorneys, David Macey and Luis Guerra. Macey opposes the motion, and Guerra and Recio have moved for leave to adopt Macey's response in opposition to the Government's motion. For the reasons that follow, the Government's motion is granted.

I.      **Background**

On November 7, 2023, Defendants John Costanzo Jr. and Manuel Recio were convicted of bribery, conspiracy to commit bribery, honest services wire fraud, and conspiracy to commit honest services wire fraud. The evidence presented at trial showed that Costanzo, a DEA special agent, shared confidential DEA information with Recio, a former DEA agent turned private investigator, in exchange for nearly $100,000. Recio worked with Miami criminal defense attorneys, including David Macey and Luis Guerra, who used Costanzo's leaked information to recruit DEA targets as clients.

1

On January 22, 2024, the Government moved for a ruling that the crime-fraud exception applies to certain communications between Recio and the two defense attorneys, Macey and Guerra. These communications comprise: (1) emails, text messages, and WhatsApp messages ("Recio ESI") obtained pursuant to search warrants for Recio's cellphone and email accounts; and (2) audio recordings and transcripts of intercepted phone calls from Recio's phone ("Recio Intercepted Communications"). A Government "filter team" is currently in possession of these communications and has not shared them with the prosecution team in this case. The filter team estimates (1) that the Recio ESI contains approximately 700 documents constituting crime-fraud communications between Recio and either Macey or Guerra, and (2) that the Recio Intercepted Communications contain no more than 160 recordings and transcripts constituting crime-fraud communications. The Government has moved for a ruling that these communications fall within the crime-fraud exception, so that they may be released to the prosecution. (ECF No. 212.) Alternatively, the Government requests an *in camera* review of these communications if the Court deems it necessary. (*Id*. at 24.)

On February 9, 2024, the Court granted a joint motion filed by Macey and Guerra to intervene as non-parties. (ECF No. 214.) Macey filed his opposition to the Government's motion on February 19, 2024. (ECF No. 216.) Guerra and Recio filed separate motions for leave to adopt Macey's opposition, which the Court hereby grants. (ECF No. 218; ECF No. 219.) The Government filed its reply on February 29, 2024. (ECF No. 240.)

## II.    Legal Standard

The attorney-client privilege seeks "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege "protects communications (1) between a client and his or her attorney (2) that are

intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997). To be protected, the "predominant purpose of the communication" must be "to render or solicit legal advice." *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007).

The attorney work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975).  Federal Rule of Civil Procedure 26(b)(3) codified the common law attorney work-product doctrine.  The rule provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A); *see also Hickman v. Taylor*, 329 U.S. 495 (1947) (establishing and articulating application of the work-product doctrine).  The key factor in determining applicability of this doctrine is whether the documents or things were prepared "in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)(A ).

Given the importance of attorney-client privilege and the attorney work-product doctrine, exceptions to them are narrow.  *See United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997), *abrogated on other grounds by Loughlin v. United States*, 573 U.S. 351 (2014).  One long-recognized exception is when legal advice furthers a client's crime or fraud.  *United States v. Zolin*, 491 U.S. 554, 562 (1989).  "Although there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud."  *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.

1995).  Thus, a person may not claim the benefit of the privilege for communications or work product "made for the purpose of getting advice for the commission of a fraud or crime." *Zolin*, 491 U.S. at 563 (cleaned up).  "The privilege takes flight if the relation is abused.  A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.  He must let the truth be told." *Clark v. United States*, 289 U.S. 1, 15 (1933).

To invoke the crime-fraud exception, a party must "'demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed'—or has been attempted—'and that the communications in question were in furtherance of the fraud or crime.'" *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426 (2013) (quoting *Jacobs*, 117 F.3d at 87).  The facts supporting these two required showings "must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'" *Jacobs*, 117 F.3d at 87 (quoting *In re John Doe, Inc.*, 13 F.3d 633, 637 (2d Cir. 1994)).

As to the first showing, an indictment establishes probable cause that a crime has been committed.  *See, e.g.*, *United States v. Levin*, No. 15-CR-101, 2015 WL 5838579, at *4 (S.D.N.Y. Oct. 5, 2015) ("The Grand Jury has returned an Indictment, finding probable cause to charge the defendants with mail and wire fraud . . . .  The Government has thus satisfied the first prong of the crime-fraud exception."); *United States v. Tucker*, 254 F. Supp. 3d 620, 624 (S.D.N.Y 2017) ("[T]he fact that a grand jury issued the Indictment . . . supports a finding of probable cause that a crime was committed.").  But "the fact that there is probable cause to believe that a fraud or crime has been committed does not mean that" all the relevant documents "are subject to the crime fraud exception." *United States v. Ceglia*, No. 12-CR-876, 2015 WL

1499194, at *2 (S.D.N.Y. Mar. 30, 2015).  The Government must still satisfy the second showing.

As to the second showing, the requirement of probable cause that the communications in question furthered the crime ensures that the exception's reach is tailored.  "[T]he crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud."  *Richard Roe, Inc.*, 68 F.3d at 40.  Instead, it "applies only when the court determines that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud."  *Id*.  Moreover, an indictment alone does not establish that all attorney-client communications were made in furtherance of the crime charged.  *Levin*, 2015 WL 5838579, at *4.  Instead, applying the exception demands a preliminary finding—satisfying a probable-cause burden—that the particular communications were in furtherance of the relevant crime.  *See In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986).

The exception applies even if the attorney, at the time of the attorney-client communication, was unaware of the client's criminal purpose.  *See Amusement Indus.*, 293 F.R.D. at 426 (collecting cases).  That is because, although there must be a "purposeful nexus" between the crime or fraud and the communication, the relevant intent is that of the client.  *Id.* at 427 (citation omitted).  And even "facially legitimate conduct [by counsel] may constitute an action taken in furtherance of fraud in appropriate circumstances."  *Levin*, 2015 WL 5838579, at *4.

"[T]he probable cause necessary to sustain the exception is not an overly demanding standard."  *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-CV-4978, 1999 WL 61442, at *5 (S.D.N.Y. Feb. 3, 1999).  And "a lesser evidentiary showing is needed to trigger *in camera*

review than is required ultimately to overcome the privilege." *Zolin*, 491 U.S. at 572.  Before

conducting an *in camera* review "to determine the applicability of the crime-fraud exception, the

judge should require a showing of a factual basis adequate to support a good faith belief by a

reasonable person that *in camera* review of the materials may reveal evidence to establish the

claim that the crime-fraud exception applies." *Id.* (cleaned up).  Once such a showing is made,

"the decision whether to engage in *in camera* review rests in the sound discretion of the district

court." *Id.*

## III.    Discussion

### A.    Crime or Fraud

The Government must first "demonstrate that there is a factual basis for a showing of

probable cause to believe that a fraud or crime has been committed." *Jacobs*, 117 F.3d at 87.

An indictment issued by a grand jury supports a finding of probable cause that a crime or fraud

has been committed.  *See, e.g.*, *Levin*, 2015 WL 5838579, at *4; *Tucker*, 254 F. Supp. 3d at 624;

*see also Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (holding that a grand jury's return of an

indictment "conclusively determines the existence of probable cause").  Here, two of the co-

conspirators, Costanzo and Recio, were convicted at trial based on evidence of their participation

in the bribery scheme.  Accordingly, the Court finds that the Government has satisfied the first

prong of the crime-fraud exception.

### B.    Relevant Communications in Furtherance of a Crime or Fraud

The Government must also "demonstrate that there is a factual basis for a showing of

probable cause to believe . . . that the communications in question were in furtherance of the

fraud or crime." *Jacobs*, 117 F.3d at 87.  The "proposed factual basis must strike 'a prudent

person' as constituting 'a reasonable basis to suspect . . . that the communications were in

furtherance" of the perpetration or attempted perpetration of a crime or fraud. *Id*. (quoting *In re John Doe*, 13 F.3d at 637).

Based upon the evidence presented at trial supporting the conviction of the defendants, the Court finds that the Government has met this "not . . . overly demanding standard." *A.I.A. Holdings*, 1999 WL 61442 at *5. The evidence at trial established that Costanzo leaked sensitive and confidential DEA information to aid Recio's work for Macey and Guerra, who were co-conspirators in the bribery scheme. On multiple occasions, Recio asked for Costanzo's help in identifying potential new clients for Macey and Guerra by having Costanzo look up names in DEA's internal database and pass along information about the individuals. Costanzo also leaked information to Recio about indictments and arrests in order to steer defendants to Macey and Guerra. Costanzo also discussed with Recio how they could assist Macey and Guerra with existing clients. Evidence from non-privileged communications between Macey and Recio presented at trial also demonstrates how Macey and Recio communicated about the need for confidential DEA information and how to exploit that information for personal gain. Because the bribery scheme required Recio to convey the inside information obtained from Costanzo to Macey and Guerra, the Court finds that a prudent person would have a reasonable basis to suspect that Recio's communications with Macey and Guerra were themselves in furtherance of the crime.

Even though the crime-fraud exception does not require Macey or Guerra to have been aware that Recio was communicating information obtained from an unlawful source, the evidence presented at trial established that Macey and Guerra knew that Costanzo was leaking information in violation of his lawful duties. On multiple occasions, Costanzo communicated directly with Macey and Guerra about potential clients, including passing along information

obtained from queries of DEA's internal database.  Costanzo also created a WhatsApp chat group with Recio and Guerra to share inside information about a potential client.  Macey and Guerra's knowledge that Costanzo was leaking confidential DEA information only strengthens the case for a finding of probable cause that Recio's communications with the two attorneys were in furtherance of the bribery scheme.

Macey's arguments in opposition are unavailing.  Macey contends that the Government's motion to apply the crime-fraud exception should be denied because the Government's filter team has not identified the particular communications made in furtherance of the crime.  (ECF No. 216 at 8-9.)  Courts in this District, however, have applied the crime-fraud exception over focused categories of evidence without first requiring a filter team to identify each communication subject to the exception.  *See, e.g.*, *United States v. Kaplan*, No. 02-CR-883, 2003 WL 22880914, at *10 (S.D.N.Y. Dec. 5, 2003); *United States v. Scott*, No. 17-CR-630 (S.D.N.Y. Sept. 25, 2019) (ECF No. 133).  These focused categories have included categories defined by the parties to the communications—and specifically communications between a criminal defendant and his co-conspirators.  *See Scott*, No. 17-CR-630 (ECF No. 133 at 1).  Application of the categorial approach in this case would not create a general waiver of the attorney-client privilege because it would be focused on the narrow category of Macey's and Guerra's communications with Recio.

Accordingly, the Court rules that the evidence supports a finding of probable cause to believe that Macey and Guerra's communications with Recio fall within the crime-fraud exception.  Based on the evidence presented at trial and the precedent of applying the categorical approach in crime-fraud exception cases, the Court also finds that *in camera* review—which is a

discretionary alternative to establishing the crime-fraud exception with independent evidence, *see Kaplan*, 2003 WL 22880914, at *10—is not necessary in this case.

C.      **Crime-Fraud Review Procedure**

The Government has proposed a review procedure to identify potentially privileged information held by the filter team that was not in furtherance of a crime or fraud.  (ECF No. 212 at 23.)  Because Macey and Guerra's communications with Recio could implicate the attorney-client privilege of third parties not involved in the bribery scheme, the Government proposes serving a copy of this motion on counsel for Macey and Guerra, who would be best positioned to identify which of their clients would be affected by the motion.  If any of those clients raise concerns about the disclosure of privileged information, the Government's filter team would work with those third parties to identify potentially privileged communications that were not made in furtherance of the bribery scheme.  The filter team would provide third-party clients with a reasonable timeframe to respond to the filter team's determinations with any objections before releasing the materials to the prosecution team.  The Court could conduct an *in camera* review of particular communications if a dispute arises over certain documents or communications held by the filter team.

The Court determines that the Government's proposed review procedure would be expeditious and efficient, as well as providing reasonable and sufficient safeguards for potential third-party privilege holders.  Macey's counterproposal, which includes requiring the filter team to first identify the specific communications made in furtherance of the crime, would result in inordinate delay.  The counterproposal is also inconsistent with case law from this District expressing severe reservations about breaching the ethical wall between prosecutors and filter teams by having filter teams participate substantively in the filing of crime-fraud motions.  *See,*

*e.g.*, *Levin*, 2015 WL 5838579 at *2 (S.D.N.Y. Oct. 5, 2015).  Accordingly, the Court approves and adopts the third-party privilege review procedure proposed by the Government in its motion.

**IV.     Conclusion**

For the foregoing reasons, the Government's motion to apply the crime-fraud exception is granted, and the Court rules that the crime-fraud exception applies to the communications identified herein.

The Clerk of Court is directed to close the motions at ECF Numbers 212, 218, and 219.

SO ORDERED.

Dated:  May 8, 2024
New York, New York

_____
J. PAUL OETKEN
United States District Judge

10